Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BAXTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CYPRESS SEMICONDUCTOR CORPORATION, DR. W. STEVE ALBRECHT, HASSANE EL-KHOURY, CATHERINE P. LEGO, JEANNINE P. SARGENT, JEFFREY J. OWENS, CAMILLO MARTINO, OH-CHUL KWON, and MICHAEL S. WISHART,<br><br>Defendants. | Case No. 3:19-cv-3944<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff David Baxter ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Cypress Semiconductor Corporation ("Cypress" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Cypress, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Cypress and Infineon Technologies AG ("Infineon").

2.      On June 2, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $23.85 in cash for each share of Cypress stock they own (the "Merger Consideration").

3.      On July 2, 2019, in order to convince Cypress shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    incomplete and misleading.

2        5.    In particular, the Proxy contains materially incomplete and misleading information

3    concerning: (i) the financial projections for the Company that were prepared by the Company and

4    relied on by Defendants in recommending that Cypress shareholders vote in favor of the Proposed

5    Transaction; and (ii) the summary of certain valuation analyses conducted by Cypress's financial

6    advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its opinion that the Merger

7    Consideration is fair to shareholders, on which the Board relied.

8        6.    It is imperative that the material information that has been omitted from the Proxy

9    is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an

10   informed decision regarding the Proposed Transaction.

11       7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

12   Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants'

13   violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9).

14   Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction

15   and taking any steps to consummate the Proposed Transaction unless, and until, the material

16   information discussed below is disclosed to Cypress shareholders sufficiently in advance of the

17   vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to

18   recover damages resulting from the Defendants' violations of the Exchange Act.

19                        **JURISDICTION AND VENUE**

20       8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

21   Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

22   violations of Section 14(a) and 20(a) of the Exchange Act.

23       9.    Personal jurisdiction exists over each Defendant either because the Defendant

24   conducts business in or maintains operations in this District, or is an individual who is either

25   present in this District for jurisdictional purposes or has sufficient minimum contacts with this

26   District as to render the exercise of jurisdiction over Defendant by this Court permissible under

27

28
- 2 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    traditional notions of fair play and substantial justice.

2        10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

3    78aa, as well as under 28 U.S.C. § 1391, because Cypress maintains its principal executive offices

4    in this District.

5                                **PARTIES**

6        11.    Plaintiff is, and at all relevant times has been, a holder of Cypress common stock.

7        12.    Defendant Cypress is incorporated in Delaware and maintains its principal

8    executive offices at 198 Champion Court, San Jose, California 95134. The Company's common

9    stock trades on the NASDAQ under the ticker symbol "CY."

10        13.    Individual Defendant Dr. W. Steve Albrecht is Cypress's Chairman and has been a

11    director of Cypress since January 2003.

12        14.    Individual Defendant Hassane El-Khoury is Cypress's President and Chief

13    Executive Officer and has been a director of Cypress since August 2016.

14        15.    Individual Defendant Catherine P. Lego has been a director of Cypress since

15    September 2017.

16        16.    Individual Defendant Jeannine P. Sargent has been a director of Cypress since

17    December 2017.

18        17.    Individual Defendant Jeffrey J. Owens has been a director of Cypress since

19    September 2017.

20        18.    Individual Defendant Camillo Martino has been a director of Cypress since June

21    2017.

22        19.    Individual Defendant Oh-Chul Kwon has been a director of Cypress since May

23    2015.

24        20.    Individual Defendant Michael S. Wishart has been a director of Cypress since

25    January 2015.

26

27

28
                                - 3 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

21.    The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Cypress (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of June 25, 2019, there were approximately 385,000,000 shares of Cypress common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Cypress will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

- 4 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

iv)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**I.    The Proposed Transaction**

24.    Cypress manufactures and sells embedded system solutions for automotive, industrial, consumer and enterprise markets. The Company operates under two business segments: Microcontroller and Connectivity Division and Memory Products Division.

25.    On June 3, 2019, Cypress and Infineon issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

MUNICH, Germany and SAN JOSE, Calif., June 3, 2019 /PRNewswire/ -- Infineon Technologies AG (FSE: IFX /OTCQX: IFNNY) and Cypress

- 5 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

Semiconductor Corporation (NASDAQ: CY) today announced that the companies have signed a definitive agreement under which Infineon will acquire Cypress for US$23.85 per share in cash, corresponding to an enterprise value of €9.0 billion.

Reinhard Ploss, CEO of Infineon, said: "The planned acquisition of Cypress is a landmark step in Infineon's strategic development. We will strengthen and accelerate our profitable growth and put our business on a broader basis. With this transaction, we will be able to offer our customers the most comprehensive portfolio for linking the real with the digital world. This will open up additional growth potential in the automotive, industrial and Internet of Things sectors. This transaction also makes our business model even more resilient. We look forward to welcoming our new colleagues from Cypress to Infineon. Together, we will continue our shared commitments to innovation and focused R&D investments to accelerate technology advancements."

Hassane El-Khoury, President and CEO of Cypress, said: "The Cypress team is excited to join forces with Infineon to capitalize on the multi-billion dollar opportunities from the massive rise in connectivity and computing requirements of the next technology waves. This announcement is not only a testament to the strength of our team in delivering industry-leading solutions worldwide, but also to what can be realized from uniting our two great companies. Jointly, we will enable more secure, seamless connections, and provide more complete hardware and software sets to strengthen our customers' products and technologies in their end markets. In addition, the strong fit of our two companies will bring enhanced opportunities for our customers and employees."

Steve Albrecht, Chairman of the Board of Directors of Cypress, said: "For the past three years, our Cypress 3.0 strategy has delivered tremendous results and restructured the entire organization to focus on markets that matter. After receiving interest from several companies, we entered into a transaction that is a testament to our team's strategy and hard work. For Cypress shareholders, the combination of continued dividends through closing plus the US$23.85 cash price represents significant value creation. This transaction will create product opportunities that are increasingly important in the competitive automotive, industrial, and consumer markets. As Board members, we are grateful for Cypress's outstanding management team, led by Hassane El-Khoury."

**More robust positioning in high-growth markets**
With the addition of Cypress, Infineon will consequently strengthen its focus on structural growth drivers and serve a broader range of applications. This will accelerate the company's path of profitable growth of recent years. Cypress has a differentiated portfolio of microcontrollers as well as software and connectivity components that are highly complementary to Infineon's leading power semiconductors, sensors and security solutions. Combining these technology assets will enable comprehensive advanced solutions for high-growth applications such as electric drives, battery-powered devices and power supplies. The combination of

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**
3:19-cv-3944

Infineon's security expertise and Cypress's connectivity know-how will accelerate entry into new IoT applications in the industrial and consumer segments. In automotive semiconductors, the expanded portfolio of microcontrollers and NOR flash memories will offer great potential, especially in light of their growing importance for advanced driver assistance systems and new electronic architectures in vehicles.

With the addition of Cypress's strong R&D and geographical presence in the U.S, Infineon not only strengthens its capabilities for its major customers in North America, but also in other important geographical regions. The company adds to its R&D presence in Silicon Valley and gains presence, as well as market share, in the strategically important Japanese market. At the same time, Infineon aims to achieve significant economies of scale, making Infineon's business model even more resilient. Based on pro forma revenues of €10 billion in FY 2018, the transaction will make Infineon the number eight chip manufacturer in the world. In addition to its already leading position in power semiconductors and security controllers, Infineon will now also become the number one supplier of chips to the automotive market.

**Improved financial strength following full integration**
The acquisition will also improve Infineon's financial strength and Infineon shareholders are expected to benefit from earnings accretion beginning in the first full fiscal year after closing. The capital intensity will decrease, resulting in an increasing free cash flow margin. Infineon has validated sales and cost synergies assumptions as part of due diligence. Expected economies of scale will create cost synergies of €180 million per annum by 2022. The complementary portfolios will enable the offering of further chip solutions with a revenue synergies potential of more than €1.5 billion per annum in the long term.

Upon successful integration, Infineon will adapt its target operating model accordingly. Then, the company targets through-cycle revenue growth of 9+ percent and a segment result margin of 19 percent. The investment-to-sales ratio is targeted to decrease to 13 percent.

**Transaction details**
Under the terms of the agreement, Infineon will offer US$23.85 in cash for all outstanding shares of Cypress. This corresponds to a fully diluted enterprise value for Cypress of €9.0 billion. The offer price represents a 46 percent premium to Cypress's unaffected 30-day volume-weighted average price during the period from 15 April to 28 May 2019, the last trading day prior to media reports regarding a potential sale of Cypress.

Cypress expects to continue its quarterly cash dividend payments until the transaction closes. This includes Cypress's previously announced quarterly cash dividend of US$0.11 per share, payable on July 18, 2019 to holders of record of Cypress's common stock at the close of business on June 27, 2019.

- 7 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

The funding of the acquisition is fully underwritten by a consortium of banks. Infineon is committed to retaining a solid investment grade rating and, consequently, Infineon intends to ultimately finance approximately 30 percent of the total transaction value with equity and the remainder with debt as well as cash on hand. The financial policy to preserve a strategic cash reserve remains in place.

The acquisition is subject to approval by Cypress's shareholders and the relevant regulatory bodies as well as other customary conditions. The closing is expected by the end of calendar year 2019 or early 2020.

Credit Suisse and J.P. Morgan acted as lead financial advisors to Infineon. Bank of America Merrill Lynch also acted as financial advisor. All three banks acted as structuring banks in addition to providing committed financing for the transaction, Bank of America Merrill Lynch in the lead. Kirkland & Ellis LLP and Freshfields Bruckhaus Deringer LLP are acting as legal advisors to Infineon.

Morgan Stanley is acting as exclusive financial advisor to Cypress, and Simpson Thacher & Bartlett LLP is serving as legal counsel.

**Analyst telephone conference and press telephone conference**
Infineon will host a telephone conference call including a webcast for analysts and investors (in English only) on 3 June 2019 at 8:15 am (CEST) in order to inform about the planned transaction. In addition, the Management Board will host a telephone press conference with the media at 9:15 am (CEST). It can be followed over the Internet in both English and German. Both conferences will also be available live and for download on Infineon's website at www.infineon.com.

**Contacts**
Media Relations Infineon Technologies AG
+49 (89) 234-23888
Media.Relations@infineon.com

Sian Cummings, Head of Communications, Infineon Americas
+1 (310) 252 7148
Sian.Cummings@infineon.com

Colin Born
Vice President, Corporate Development and Investor Relations, Cypress
+1 (408)545-7626
InvestorRelations@cypress.com

Ann Minooka
Vice President, Corporate Marketing and Communications, Cypress
+1 (408) 456-1962
Ann.Minooka@cypress.com

- 8 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**About Infineon**

Infineon Technologies AG is a world leader in semiconductor solutions that make life easier, safer and greener. Microelectronics from Infineon is the key to a better future. In the 2018 fiscal year (ending 30 September), the Company reported sales of €7.6 billion with about 40,100 employees worldwide. Infineon is listed on the Frankfurt Stock Exchange (ticker symbol: IFX) and in the USA on the over-the-counter market OTCQX International Premier (ticker symbol: IFNNY).

Further information is available at www.infineon.com
This press release is available online at www.infineon.com/press

Follow us: Twitter - Facebook - LinkedIn

**About Cypress**

Cypress is the leader in advanced embedded solutions for the world's most innovative automotive, industrial, smart home appliances, consumer electronics and medical products. Cypress's microcontrollers, wireless and USB-based connectivity solutions, analog ICs, and reliable, high-performance memories help engineers design differentiated products and get them to market first. Cypress is committed to providing customers with the best support and development resources on the planet enabling them to disrupt markets by creating new product categories in record time.

To learn more, go to www.cypress.com.

26.    Cypress is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

27.    If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e. the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

**II.     The Materially Incomplete and Misleading Proxy**

28.     On July 2, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*The Materiality of Financial Projections*

29.     A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the Proxy discloses ". . . these [p]rojections were shared between Cypress and Infineon and provided to Cypress's and Infineon's respective financial advisors and the Board, as applicable, for purposes of considering and evaluating the merger and the merger agreement." Proxy 71.

30.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

31.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  17 C.F.R. § 229.10(b)(2).

32.    In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33.    Here, Cypress's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine "that [the Merger Agreement] is in the best interests of Cypress and the stockholders of Cypress, and declared it advisable, to enter into the merger agreement providing for the merger in accordance with the DGCL[.]"  Proxy 56.

34.    As discussed further below, the non-GAAP financial projections here do not provide Cypress's shareholders with a materially complete understanding of the assumptions and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

### The Financial Projections Relied on by the Board

35. The Proxy discloses that "in connection with the discussions regarding the proposed merger, Cypress's management prepared certain unaudited prospective financial information, treating Cypress on a standalone basis[.]" *Id.* at 71

36. The Proxy further discloses that the assumptions used in the financial projections were "in the view of Cypress's management, [] prepared on a reasonable basis, reflected the best available estimates and judgments of Cypress's management at the time of preparation, and presented as of the time of preparation, to the best of management's knowledge and belief, the expected course of action and the expected future financial performance of Cypress on a standalone basis[.]" *Id.*

37. Three sets of projections appear in the Proxy: the Bidder Case, the Target Plan, and the Street Extrapolation Case. The Target Plan is management's projections that treat Cypress on a standalone basis. *Id.* The Bidder Case is a set of projections provided to bidders during the sales process. *Id.* For the Street Extrapolation Case, Wall Street consensus estimates were utilized through fiscal year 2020 and Morgan Stanley, under the guidance of management, extrapolated the projections for fiscal years 2021 through 2028. *Id.* The proxy discloses the three sets and collectively refers to them as the "Projections." *Id.*

38. The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 through 2023 for: (1) Non-GAAP gross profit; (2) Non-GAAP operating income; (3) Non-GAAP net income and (4) Non-GAAP diluted EPS but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at 73.

- 12 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

39.    The Proxy also discloses forecasted values for projected non-GAAP financial metrics for 2019 through 2028 for: (1) Adjusted EBITDA and (2) unlevered free cash flow but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.*

40.    Gross Profit, Operating Income, Net Income and diluted EPS are usually GAAP compliant terms. However, the Proxy refers to them as non-GAAP and each projection has a footnote stating each of the measures is non-GAAP "as adjusted for the Non-GAAP Exclusions described below." *Id.* at 73 n.1-2, 4-5. Pages 74-75 of the Proxy contain a laundry list of the adjustments made to the traditionally GAAP compliant terms. *Id.* at 74-75. None of the adjustments has a numerical value associated with it and the non-GAAP values are not reconciled to their most comparable GAAP measure, thereby rendering the Proxy materially false and/or misleading.

41.    The Proxy defines Adjusted EBITDA as "a non-GAAP financial measure defined as non-GAAP operating income, as adjusted (without duplication) to exclude depreciation and amortization." *Id.* at 73 n.3.    Nevertheless, the Proxy fails reconcile EBITDA to its most comparable GAAP measure or disclose the line items used to calculate EBITDA, rendering the Proxy materially false and/or misleading.  *Id.*

42.    The Proxy defines unlevered free cash flow ("UFCF") as "a non-GAAP financial measure defined as adjusted EBITDA plus forecasted dividends from SkyHigh Memory Limited (Cypress's joint venture for NAND products), less (a) stock-based compensation, (b) taxes, (c) capital expenditures, net, and (d) changes in net working capital. For clarity, the impact of stock-based compensation, which has been excluded from adjusted EBITDA (as described above), is included in unlevered free cash flow; unlevered free cash flow therefore treats stock-based compensation expense as if it were a cash cost reducing free cash flow." *Id.* at 74 n.9. Nevertheless, the Proxy fails to reconcile unlevered free cash flow to its most comparable GAAP measure nor

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

disclose the line items used to calculate UFCF, rendering the Proxy materially false and/or misleading. *Id.*

43.    Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon.  It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

44.    The financial projections disclosed on page 73 of the Proxy violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading, as shareholders are unable to discern the veracity of the financial projections.

45.    As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

***The Financial Projections Violate Regulation G***

46.    The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation

---

[1]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

- 14 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

47.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

48.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Cypress included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices

---

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

[4]     SEC, *Final Rule.*

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

1      *which can make non-GAAP disclosures misleading*: the lack of equal or greater
prominence for GAAP measures; exclusion of normal, recurring cash operating
expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-
picking; and the use of cash per share data. I strongly urge companies to carefully
consider this guidance and revisit their approach to non-GAAP disclosures. I also
urge again, as I did last December, that appropriate controls be considered and that
audit committees carefully oversee their company's use of non-GAAP measures
and disclosures.[6]

49.     The SEC has required compliance with Regulation G, including reconciliation

requirements, in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5

(Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP

financials relating to a business combination)[7], *with Youku Tudou Inc., et al.*, SEC Staff Comment

Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information

is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus

not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29

(Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation

of actual and projected EBIT to GAAP net income . . . .").[9]

50.     Compliance with Regulation G is mandatory under Section 14(a), and non-

compliance constitutes a violation of Section 14(a). Thus, in order to bring the Proxy into

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

[9]     *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures. Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1.pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf. The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official position. Any claim that the SEC has officially sanctioned the use of non-GAAP

- 16 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

1  compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

2  financial measures to their respective most comparable GAAP financial measures.

3      ***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

4      51.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or,

5  at the very least, the line items utilized in calculating the non-GAAP measures render the financial

6  forecasts disclosed materially misleading, as shareholders are unable to understand the differences

7  between the non-GAAP financial measures and their respective most comparable GAAP financial

8  measures. Nor can shareholders compare the Company's financial prospects with similarly

9  situated companies.

10     52.    Such projections are necessary to make the non-GAAP projections included in the

11 Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge that Non-

12 GAAP financial measures "should not be viewed as a substitute for GAAP financial measures and

13 may be defined differently than non-GAAP financial measures used by other companies."  Proxy

14 72.

15     53.    As such, financial projections are plainly material, and shareholders would clearly

16 want a complete and non-misleading understanding of those projections.

17     54.    In order to cure the materially misleading nature of the projections under SEC Rule

18 14a-9 as a result of the omitted information on page 73, Defendants must provide a reconciliation

19 table of the non-GAAP financial measures to the most comparable GAAP measures.

20     ***The Materially Misleading Financial Analyses***

21     55.    The summary of the valuation methodologies utilized by Morgan Stanley including

22 the utilization of certain of the non-GAAP financial projections described above by Morgan

23 ────────────────────────

24 financial forecasts for business combinations when the Board itself created and relied on such non-
   GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The
   SEC's website provides certain unofficial guidance for certain matters, called Compliance and

25 Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of
   particular SEC staff and on which certain issuers have in the past claimed an exemption from

26 Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have
   been reviewed by the SEC, and the SEC expressly states that they are not binding and should not

27 be relied on. *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

28 **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
   THE SECURITIES EXCHANGE ACT OF 1934**

Stanley, in connection with its valuation analyses, (*id.* at 62-63) is misleading in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a proxy discloses internal projections relied upon by the Board, those projections must be complete and accurate.

56.   With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy states Morgan Stanley used fiscal year 2021 non-GAAP diluted EPS multiplied by a range of price to earning multiples, discounted at a cost of equity of 11.1%, to estimate the Company's equity value. *Id.* at 66. The Proxy fails to disclose the multiple range utilized by Morgan Stanley and the inputs and assumptions that went into the selection of the 11.1% discount rate.

57.   With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*, the Proxy fails to disclose the individual price targets and identify their sources.

58.   With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy states that Morgan Stanley calculated the Company's estimated UFCF using both the Target Plan and the Street Extrapolation Case. *Id.* When extrapolating the data to 2028, Morgan Stanley did so under the guidance of Cypress management. *Id.* Morgan Stanley used a perpetual growth rate of 2% to 3% to calculate the terminal value. *Id.* Morgan Stanley discounted the UFCF values and the terminal values to May 31, 2019 using a discount rate of 9.4% to 11.1% based on the Company's weighted average cost of capital. *Id.* at 66-67.

59.   The Proxy does not provide the information Morgan Stanley utilized in the *Discounted Cash Flow Analysis*. The Proxy did not disclose the values Morgan Stanley calculated for the range of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, any enterprise value adjustments made during the analysis nor the fully diluted outstanding shares. The Proxy also fails to disclose the inputs and assumptions that went into selecting the perpetual growth rate of 2% to 3%.

- 18 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

60.     Since information was omitted, shareholders are unable to discern the veracity of Morgan Stanley's *Discounted Cash Flow Analysis*. Without further disclosure, shareholders are unable to compare Morgan Stanley's calculations with the Company's financial projections. The absence of any single piece of the above information renders Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

61.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

62.     Therefore, in order for Cypress shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

63.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a)

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Cypress shareholders.

64.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

65.    Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (*i.e.* the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

66.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

68.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation

- 20 -

of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

69.    The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

70.    As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

73.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading.*" 17 C.F.R. § 244.100(b) (emphasis added).

74.    Defendants have issued the Proxy with the intention of soliciting shareholder

- 21 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

75.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

76.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

77.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

78.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

79.    Cypress is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

80.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

81.    As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT III
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

82.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.    The Individual Defendants acted as controlling persons of Cypress within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of Cypress, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

84.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-3944

1  shortly after these statements were issued and had the ability to prevent the issuance of the

2  statements or cause the statements to be corrected.

3        85.    In particular, each of the Individual Defendants had direct and supervisory

4  involvement in the day-to-day operations of the Company and, therefore, is presumed to have had

5  the power to control or influence the particular transactions giving rise to the Exchange Act

6  violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous

7  recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They

8  were thus directly involved in preparing the Proxy.

9        86.    In addition, as the Proxy sets forth at length, and as described herein, the Individual

10  Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

11  Proxy purports to describe the various issues and information that the Individual Defendants

12  reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

13  input on the content of those descriptions.

14        87.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

15  of the Exchange Act.

16        88.    As set forth above, the Individual Defendants had the ability to exercise control

17  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

18  their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

19  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

20  result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

21                        <u>**PRAYER FOR RELIEF**</u>

22        **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

23        A.    Declaring that this action is properly maintainable as a Class Action and certifying

24  Plaintiff as Class Representative and his counsel as Class Counsel;

25        B.    Enjoining Defendants and all persons acting in concert with them from proceeding

26  with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction,

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

1  unless and until the Company discloses the material information discussed above which has been

2  omitted from the Proxy;

3        C.      Directing Defendants to account to Plaintiff and the Class for all damages sustained

4  as a result of their wrongdoing and to award damages arising from proceeding with the Proposed

5  Transaction;

6        D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

7  attorneys' and expert fees and expenses; and

8        E.      Granting such other and further relief as this Court may deem just and proper.

9                                  **JURY DEMAND**

10        Plaintiff demands a trial by jury on all issues so triable.

11  Dated:  July 9, 2019

12                                            Respectfully submitted,

13                                            **FARUQI & FARUQI, LLP**

14  **OF COUNSEL:**                           By: _/s/ Benjamin Heikali_____
                                              Benjamin Heikali, Bar No. 307466
15  **FARUQI & FARUQI, LLP**                  10866 Wilshire Blvd., Suite 1470
                                              Los Angeles, CA 90024
16  Nadeem Faruqi                             Tel.: (424) 256-2884
    James M. Wilson, Jr.                      Fax: (424) 256-2885
17  685 Third Ave., 26th Fl.                  Email: bheikali@faruqilaw.com
    New York, NY 10017
18  Telephone: (212) 983-9330                 *Counsel for Plaintiff*
    Email: nfaruqi@faruqilaw.com
19  Email: jwilson@faruqilaw.com

20  *Counsel for Plaintiff*

21

22

23

24

25

26

27

28
                                    - 25 -
    **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
                  **THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Baxter ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a draft complaint against Cypress Semiconductor Corp. (Cypress") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.    Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.    Plaintiff's transactions in Cypress securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.    In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 8th day of July, 2019.

_____
David Baxter

| Transaction (Purchase or Sale) | Trade Date | Quantity |
| --- | --- | --- |
| Purchase | 10/03/17 | 550 |
|  |  |  |
|  |  |  |